**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Feb 01 2013, 10:06 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARIANNE WOOLBERT**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**DONALD L. HANNAH**
DCS, Madison County
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: Se.L.; N.L.; G.L.; J.L.; Sh.L.; L.L.;& I.L. (Minor Children), | ) ) ) ) ) | |
| And | ) ) | |
| D.L. (Mother), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No.  48A02-1207-JT-537 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable G. George Pancol, Judge
Cause Nos. 48C02-1112-JT-42
48C02-1112-JT-43
48C02-1112-JT-44
48C02-1112-JT-45
48C02-1112-JT-46

February 1, 2013

MEMORANDUM DECISION - NOT FOR PUBLICATION

**ROBB, Chief Judge**

Case Summary and Issue

D.L. ("Mother") appeals the juvenile court's termination of her parental rights. She presents one issue on appeal: whether sufficient evidence supported the termination of her parental rights. Concluding that the termination was supported by sufficient evidence, we affirm.

Facts and Procedural History[1]

In June 2010, the Indiana Department of Child Services ("DCS") filed a petition alleging that each of Mother's seven children, Se.L., N.L., G.L., J.L., Sh.L., L.L., and I.L., was a child in need of services ("CHINS"). The petition stated that DCS visited the house after receiving information from a police officer that children were playing outside unattended. This was the fourth report that DCS had received on the family within the past

---

[1] We note that Mother's brief does not meet the requirements of Indiana Appellate Rule 46. Among other deficiencies, the statement of facts is functionally missing as it is merely a condensation of the statement of the case, and the argument section is cluttered with a witness-by-witness summary of the testimony. Counsel is reminded that the Appellate Rules are not a mere suggestion.

month. The petition described DCS's arrival at the house, finding that the children were filthy, the home was filthy with trash and dirty diapers, five of the children did not have beds and slept on dirty couches, bugs swarmed the bathroom, and the youngest child appeared to be undernourished. The children were emergently placed into foster care as soon as DCS became involved. Within a couple of days, the juvenile court conducted an initial hearing at which Mother was present with counsel and admitted to the CHINS allegations, and the children were adjudicated to be CHINS.[2] In July 2010, the court held a dispositional hearing at which it ordered the children to remain in foster care, and, in relevant part, ordered Mother to: visit the children each week; submit to a mental health assessment and follow all resulting recommendations; contact a family case manager at least once a week; work with a home-based counselor to address parenting, safety, and other issues; and maintain a safe and sanitary home with adequate utilities and furnishings.

By January 2011, it appears that the family members were fairly on-track, with the children improving in foster care, and Mother participating in services. The children were placed back at home with Mother that month for a trial visit, with DCS continuing to monitor the family. In late April or early May 2011, the children were again removed from the home and placed back into foster care, following a domestic violence incident in which one of the children received a black eye and bloody nose and another child was burned; there were also concerns related to medical neglect of the youngest child, who had improved in foster care but regressed while back at home on the trial visit, and was again considered as failure to

---

[2] The children's father was also involved in the case, and ultimately his parental rights were also terminated. Father does not participate in this appeal.

3

thrive. The Notification of Disruption of Trial Home Visit notes that when the children were removed, the home was found to be filthy and cluttered with food, dirt, and trash.

In June 2011, the court held a permanency review hearing and found that Mother had been visiting the children but was otherwise not in compliance with the plan in that she: had not been staying in contact with the family case manager; had not been available to meet with the home-based worker; and she had not been attending her counseling sessions. The permanency plan at the end of the hearing was reunification.

In December 2011, at a periodic case review, the court found that Mother had not complied with the case plan. The court found that she had not enhanced her ability to fulfill her parental obligations, and she canceled and showed up late to visits with the children and as a result she was discharged from visitation for non-compliance. The court set a permanency hearing and a projected date of adoption, noting that DCS was filing a termination of parental rights. The court ordered that services for Mother be stopped. That same month, there was an initial hearing on the petition for involuntary termination of parental rights, and Mother denied the allegations in the petition.

A fact-finding hearing on the petition for involuntary termination was conducted in March and April 2012, and on May 10, 2012, the court issued findings of fact and conclusions of law and terminated Mother's parental rights. Among other things, the court found that: during the underlying CHINS matter, Mother had failed to maintain a safe and sanitary home with adequate utilities and furnishings for the children; Mother maintained different residences, none of which was suitable for the children; Mother failed to

4

successfully complete the ordered counseling sessions and had been discharged in February 2012; Mother failed to maintain ordered contact with DCS; after the failed trial home visit, Mother initially participated in home-based services, but was discharged when the case worker could not contact her after repeated attempts; Mother's supervised visits with the children had been closed out due to Mother being chronically late; when visits did occur, they were chaotic and Mother frequently had to be prompted and re-directed, and Mother did not demonstrate the ability to care for the needs of all of the children at the same time; Mother has substantial history with DCS spanning several years both in Indiana and New Mexico, and some of the children had spent time in foster care prior to the detention in 2010 that precipitated the underlying CHINS matter; at the time of the hearing, Mother was staying with relatives and did not have a residence of her own, and she was unemployed and unable to financially support the children; and the children had thrived in foster care and those who were behind academically had progressed while in foster care. The court concluded that there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied. The court also concluded that there was a reasonable probability that the continuation of the parent-child relationship posed a threat to the well-being of the children and that Mother was not in a position to care for the children. The court concluded that termination of the parent-child relationship was in the best interest of the children. This appeal followed.

## Discussion and Decision

### I. Standard of Review

In determining whether the evidence is sufficient to support a judgment terminating parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re D.J., 755 N.E.2d 679, 683 (Ind. Ct. App. 2001), trans. denied. We consider only the evidence favorable to the judgment and the reasonable inferences to be drawn therefrom. Id. When reviewing the findings of fact and conclusions of law upon which a termination of parental rights is premised, we engage in a two-tiered standard of review: we first determine whether the evidence supports the findings, and second, whether the findings support the judgment. Id. We will reverse only upon a showing of clear error. Id. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In re A.J., 877 N.E.2d 805, 815 (Ind. Ct. App. 2007), trans. denied. A judgment is clearly erroneous only if the findings of fact do not support the trial court's conclusions thereon, or the conclusions thereon do not support the judgment. Id.

In evaluating the circumstances surrounding the termination, the court must subordinate the interests of the parents to those of the child. R.G. v. Marion Cnty. Office, Dep't of Family & Children, 647 N.E.2d 326, 328 (Ind. Ct. App. 1995), trans. denied. Termination of parental rights is proper where the child's emotional and physical development is threatened. Id. The trial court need not wait until the child is irreversibly harmed such that his physical, mental and social development is permanently impaired before terminating the parent-child relationship. Id.

## II.  Sufficiency of the Evidence to Support Termination

To effect the involuntary termination of a parent-child relationship, the following
elements must be proven by clear and convincing evidence:

> (A) that one (1) of the following is true:
>> (i) The child has been removed from the parent for at least six (6)
>> months under a dispositional decree.
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable
>> efforts for family preservation or reunification are not required,
>> including a description of the court's finding, the date of the finding,
>> and the manner in which the finding was made.
>> (iii) The child has been removed from the parent and has been under the
>> supervision of a local office or probation department for at least fifteen
>> (15) months of the most recent twenty-two (22) months, beginning with
>> the date the child is removed from the home as a result of the child
>> being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>> (i) There is a reasonable probability that the conditions that resulted in
>> the child's removal or the reasons for placement outside the home of
>> the parents will not be remedied.
>> (ii) There is a reasonable probability that the continuation of the parent-
>> child relationship poses a threat to the well-being of the child.
>> (iii) The child has, on two (2) separate occasions, been adjudicated a
>> child in need of services;
>
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2); see also Ind. Code § 31-35-2-8.

Mother's sole complaint is that there was insufficient evidence to show a reasonable
probability that the conditions that resulted in the children's removal would not be remedied.
She does not contest that sub-sections (A), (C), or (D) of the statute were met.  DCS points
out that while the court was only required to find that one of the conditions in sub-section (B)
had been met, the court concluded that both (i) and (ii) were true in this case.  Because
Mother only challenges the conclusion as to (i), even if we were to agree with her, which we

7

do not, the judgment of the court would still stand supported by the court's conclusion as to (ii). Nonetheless, for the sake of completeness, we will address the court's conclusion as to the probability that the conditions that resulted in removal would not be remedied.

To determine whether there is a reasonable probability that the conditions which resulted in the removal of the children will not be remedied, the trial court should judge a parent's ability to care for her children at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the children. Id. The trial court can also reasonably consider the services offered by DCS to the parent, and the parent's response to those services. Id.

At the time of Mother's hearing, it is clear that Mother was not able to properly care for her children, and that few conditions had changed since the children were first adjudicated to be CHINS. It is true that the father was no longer in the picture at the time of the hearing, as he was in custody and apparently was likely to be deported; further, his parental rights were also terminated and he did not appeal. However, while we sympathize with Mother's own victimization at the hands of the children's father, it is apparent that she is not able to provide a safe home for the children even with the father gone. At the time of the hearing, Mother was unemployed and living with relatives. After almost two years, she had failed to complete the counseling and services that were ordered by the court. She was unable to properly take care of all of the children when she visited them, and the children,

who had been improving in foster care, regressed when a trial home visit was attempted.  The home was found to be dirty and unsanitary when the trial visit was discontinued.  The record supports the findings of the juvenile court, and those findings support the court's conclusion.  At the time of the hearing, taking into consideration both any changes in circumstances and Mother's habitual patterns, the evidence supported the conclusion that there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied and that the children's emotional and physical development was threatened when they were in Mother's care.[3]  Termination of Mother's parental rights was thus appropriate.

## Conclusion

Concluding that the judgment of the juvenile court was not clearly erroneous and that the evidence supports the court's findings and those findings support the judgment, we affirm.

Affirmed.

MAY, J., and PYLE, J., concur.

---

[3] The evidence also supports the juvenile court's uncontested conclusion that there was a reasonable probability that the continuation of the parent-child relationship would pose a threat to the well-being of the children.